1
2
3
4
5
6
7
8           **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 POWER INTEGRATIONS, INC.,          Case No. 20-cv-410-MMA (MSB)

12                 Plaintiff,

13 v.                      **ORDER GRANTING DEFENDANTS'**
                                     **MOTION TO DISMISS**

14 EDISON D. DE LARA, et al.,

15                Defendants.     [Doc. No. 30]

16
17
18
19
20      On May 17, 2019, Power Integrations, Inc. ("Plaintiff") filed this action in the

21 United States District Court for the Northern District of California. *See* Doc. No. 1.[1]

22 Plaintiff's First Amended Complaint ("FAC") alleges six causes of action: (1) breach of

23 contract; (2) trade secret misappropriation under 18 U.S.C. § 1836; (3) interference with

24 contractual relations; (4) interference with prospective economic advantage; (5) civil

25 conspiracy; and (6) unfair competition under the California Business and Professions

26 _____

27 [1] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

Code. Doc. No. 12 ("FAC"). On July 30, 2019, Defendants Edison D. De Lara ("De Lara"), Charles Reyes Evangelista ("Evangelista"), Ian B. Barrameda ("Barrameda"), and Alex F. Mariano II ("Mariano") (collectively, "Defendants")[2] moved to dismiss Plaintiff's six causes of action pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). *See* Doc. No. 30. Plaintiff filed an opposition to Defendants' motion, and Defendants replied. *See* Doc. Nos. 34, 38.

On December 12, 2019, the Northern District issued the following ruling on the motion:

> The motion to dismiss (Dkt. 30) is TERMINATED insofar as it relates to Individual Defendants' Rule 12(b)(3) argument that venue is improper, and all deadlines associated with venue-related discovery and supplemental briefing (Dkt. 48) are VACATED. The Court will defer a ruling on the motion to dismiss (Dkt. 30) insofar as it argues for dismissal pursuant to Rule 12(b)(6) pending a ruling on Individual Defendants' forthcoming motion to transfer venue pursuant to 28 U.S.C. § 1404. Individual Defendants are ordered to file any motion to transfer venue no later than January 17, 2020.

Doc. No. 54 at 2 (emphasis omitted). Subsequently, Defendants moved to transfer the action to the United States District Court for the Southern District of California, which Plaintiff ultimately did not oppose. *See* Doc. Nos. 55, 59. On March 4, 2020, the Northern District granted the motion to transfer the action to the Southern District. *See* Doc. No. 60.

Accordingly, as the action currently stands, the previously deferred motion to dismiss pursuant to Rule 12(b)(6)—originally filed in July 2019—remains. The Court found the matter suitable for determination on the papers and without oral argument

---

[2] Stuart Hodge, Jr. ("Hodge") joined these Defendants in bringing the motion; however, Plaintiff subsequently voluntarily dismissed Hodge on August 9, 2019. *See* Doc. No. 32.

pursuant to Rule 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 63. For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss.

## I. BACKGROUND[3]

Plaintiff's allegations arise out of an employment dispute between Plaintiff, Plaintiff's previous employees, and one of Plaintiff's competitors that allegedly targeted Plaintiff's employees. *See generally* FAC ¶¶ 14–17. Plaintiff seeks to compel Defendants' compliance with their contractual obligations under the noncompetition, nonsolicitation, and confidentiality clauses. *See id.* ¶ 62. Plaintiff further seeks to hold Defendants liable for misappropriating Plaintiff's trade secrets and tortiously interfering with its business. *See id.* ¶¶ 62–65.

### A. Plaintiff and General Background

Plaintiff is a company that specializes in "power conversion technology." *Id.* ¶ 14. It is "a leading innovator in semiconductor technologies for high-voltage power conversion and a leading supplier of cutting-edge power technologies." *Id.* Silanna Semiconductor North America, Inc. ("Silanna") is a competitor of Plaintiff and "is a newcomer in the semiconductor industry and only recently entered the market for power products including DC/DC and AC/DC power converter integrated circuits." *Id.* ¶ 15. Penbrothers International Inc. ("Penbrothers") "claims to be a leading staffing and office solution provider." *Id.* ¶ 16. Plaintiff alleges—based on information and belief—that "Silanna has an agreement with Penbrothers to target, recruit, and hire select Power Integrations engineering employees and recently separated engineering employees through Penbrothers, and then assign them to work with Silanna." *Id.* ¶ 17. Silanna and Penbrothers were previously defendants in this action. *See generally* FAC. However, while this action was pending in the Northern District, Plaintiff voluntarily dismissed

---

[3] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

Silanna on July 10, 1019. *See* Doc. No. 18. The court dismissed Penbrothers based on lack of personal jurisdiction on November 18, 2019. *See* Doc. No. 49.

**B. Defendant De Lara**

Plaintiff alleges that it employed De Lara "from approximately March 22, 2016 through May 11, 2019." FAC ¶ 18. De Lara signed an "Employment Agreement," which included an "Employee Agreement Regarding Confidentiality and Inventions" ("EARCI"). *Id.* ¶¶ 19, 21; *see also* Doc. No. 12-1 (containing De Lara's Employment Agreement and EARCI). Employed as "Team Leader of the Power Supply Design Team," De Lara's work exposed him to "highly proprietary and sensitive information relating to Power Integrations' future product plans and designs" and trade secrets. *Id.* His work made him familiar with Plaintiff's Philippine operations. *Id.* Plaintiff alleges that its contract with De Lara contains noncompetition, nonsolicitation, and confidentiality clauses. *See id.* ¶¶ 19, 20.

Plaintiff alleges that "De Lara accepted employment with Penbrothers as a Staff Power Application Engineer, effective May 17, 2019, to be assigned to Silanna" and is working for Silanna in San Diego, California. *Id.* ¶¶ 23, 24. Plaintiff alleges De Lara gained employment with Silanna because of his familiarity with Plaintiff's work and products:

> De Lara gained employment or engagement with Silanna, either directly or through its agent Penbrothers, as a result of his intimate knowledge and possession of Power Integrations Confidential Information and Power Integrations Proprietary Information regarding Power Integrations' new and future product plans and designs, including and especially Power Integrations Future Product Trade Secrets, and by knowingly subjecting Power Integrations Confidential Information and Power Integrations Proprietary Information, including and especially Power Integrations Future Product Trade Secrets, to misappropriation by Silanna.

*Id.* ¶ 25. Plaintiff further alleges that De Lara "solicited, induced, or encouraged" other employees of Plaintiff to leave Plaintiff through "providing Silanna and Penbrothers with information to target other Power Integrations engineers for solicitation." *Id.* ¶ 26.

**C. Defendant Evangelista**

Plaintiff alleges it employed Evangelista "from approximately September 19, 2017 through May 16, 2019." *Id.* ¶ 27. Evangelista signed an "Employment Agreement," which included an EARCI. *Id.* ¶¶ 28, 30; *see also* Doc. No. 12-2 (containing Evangelista's Employment Agreement and EARCI). Employed as a "Power Supply Design Engineer II," Evangelista's work exposed him to "new and future products" and trade secrets. FAC ¶ 27. His work made him familiar with Plaintiff's Philippine operations. *Id.* Plaintiff alleges that its contract with Evangelista contains noncompetition, nonsolicitation, and confidentiality clauses. *See id.* ¶¶ 28, 29. Through a similar manner as De Lara, Plaintiff alleges that Evangelista is now working for Silanna in San Diego, California. *See id.* ¶¶ 32–35. Plaintiff similarly alleges that Evangelista "solicited, induced, or encouraged" other employees of Plaintiff to leave Plaintiff through "providing Silanna and Penbrothers with information to target other Power Integrations engineers for solicitation." *Id.* ¶ 35.

**D. Defendant Barrameda**

Plaintiff alleges it employed Barrameda "from approximately April 7, 2015 to March 2, 2019." *Id.* ¶ 41. Barrameda signed an "Employment Agreement," which included an EARCI. *Id.* ¶¶ 42, 44; *see also* Doc. No. 12-8 (containing Barrameda's Employment Agreement and EARCI). Employed as "Senior Power Supply Design Engineer" and "Team Leader, Power Supply Design," Barrameda's work exposed him to "new and future products" and trade secrets. FAC ¶ 41. His work made him familiar with Plaintiff's Philippine operations. *Id.* Plaintiff alleges that its contract with Barrameda contains noncompetition, nonsolicitation, and confidentiality clauses. *See id.* ¶¶ 42, 43. As opposed to the other Defendants, Plaintiff alleges that Barrameda resigned

from employment with Plaintiff to join Infineon Technologies. *Id.* ¶ 45. However, Plaintiff further notes, that "Barrameda used Infineon Technologies as a decoy, lied about his employment with Infineon and started working for Silanna either as an employee of Silanna or as an employee of Penbrothers on assignment to work for Silanna in March 2019" in California. *Id.* ¶¶ 46, 47. Plaintiff further alleges that Barrameda "solicited, induced, or encouraged" other employees of Plaintiff to leave Plaintiff through "providing Silanna and Penbrothers with information to target other Power Integrations engineers for solicitation." *Id.* ¶ 49.

**E. Defendant Mariano**

Plaintiff alleges it employed Mariano "from approximately October 1, 2008 through January 27, 2018." *Id.* ¶ 50. Mariano signed an "Employment Agreement," which included an EARCI. *Id.* ¶ 51; *see also* Doc. No. 12-9 (containing Mariano's Employment Agreement and EARCI). Employed as "Field Applications Engineer" and "Design Team Leader," Mariano's work exposed him to "new and future products" and trade secrets. FAC ¶ 50. His work made him familiar with Plaintiff's Philippine operations. *Id.* Plaintiff alleges that its contract with Mariano contains noncompetition, nonsolicitation, and confidentiality clauses. *See id.* ¶ 51. Through a similar manner as De Lara, Plaintiff alleges that Mariano is now working for Silanna in San Diego, California. *See id.* ¶¶ 53–55. Plaintiff similarly alleges that Mariano "solicited, induced, or encouraged" other employees of Plaintiff to leave Plaintiff through "providing Silanna and Penbrothers with information to target other Power Integrations engineers for solicitation." *Id.* ¶ 55.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is

6

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "'Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.' A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" *Kearns*, 567 F.3d at 1124 (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*).

### III. DISCUSSION

**A. Choice of Law**

As an initial matter, Defendants argue that they all signed an EARCI containing a California choice-of-law provision. Doc. No. 30-1 at 12. They contrast this contract with the individual Employment Agreements, which contain a Philippine choice-of-law provision that only three of the four Defendants signed—Marino signed an Employment Agreement that had only "a rough reference to Philippine law." *Id.* at 11. Despite the Philippine choice-of-law-provision, Defendants assert that California law applies "because these claims implicate fundamental questions of public policy for employees working in California for a company headquartered in California." *Id.* at 12. Defendants point to California's "fundamental public policy" disapproving "unfair restraints on

trade." *Id.* In their reply brief, Defendants further contend that California law governs because these conflicting provisions express no intent on the parties' desired choice-of-law.

In opposition, Plaintiff argues that Philippine law controls. *See* Doc. No. 34 at 17. Plaintiff points to the specific language in each Employment Agreement and EARCI to assert that the EARCI's California choice-of-law provision is narrowly confined to transactions "tak[ing] place wholly within California between California residents." *Id.* at 17. Plaintiff further asserts that Philippine law applies regardless of the California choice-of-law provision because the Philippines "has a substantial relationship to the parties to the contract and to the transaction" and "California does not have 'a materially greater interest in the particular issue' than the Philippines." *Id.* at 18 (quoting both *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996); and *Application Grp., Inc. v. Hunter Grp., Inc.*, 72 Cal. Rptr. 2d 73, 84 (Ct. App. 1998)).

**1. California's Choice-of-Law Standards**

A federal court resolving a dispute involving nonfederal law applies the forum state's choice-of-law rules to decide the governing substantive law. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)) ("Federal courts sitting in diversity must apply 'the forum state's choice-of-law rules to determine the controlling substantive law.'"). Federal courts deciding nonfederal law in California apply California choice-of-law rules. *See Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1036 (S.D. Cal. 2017); *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1151 (1992).

California courts apply a "governmental interest analysis" to resolve choice-of-law issues. *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 922 (Cal. 2006). The analysis includes three steps:

First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state," and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied."

*Id.* (quoting *Bernhard v. Harrah's Club*, 546 P.2d 719, 723 (Cal. 1976), *superseded by statute on other grounds*, Cal. Civ. Code § 1714(b), *and* Cal. Bus. & Prof. Code § 25602(c)); *see also Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp. 3d 606, 619 (E.D. Cal. 2017) (detailing the same legal standard). In the third step's "comparative impairment analysis," "the trial court must determine 'the relative commitment of the respective states to the laws involved' and consider 'the history and current status of the states' laws' and 'the function and purpose of those laws.'" *Washington Mut. Bank, FA v. Superior Court*, 15 P.3d 1071, 1081 (Cal. 2001) (quoting *Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721, 727 (Cal. 1978). "These rules apply whether the dispute arises out of contract or tort, and a separate conflict of laws inquiry must be made with respect to each issue in the case." *Id.* (citing *Application Grp., Inc.*, 72 Cal. Rptr. 2d at 82).

However, California courts apply a different analysis to cases involving choice-of-law provisions. *Application Grp., Inc.*, 72 Cal. Rptr. 2d at 82. "When an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) (quoting *Hoffman v. Citibank*

10

*(S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam)). Under the Restatement approach, the court must first determine

> (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue." If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Nedlloyd Lines B.V.*, 834 P.2d at 1152 (footnotes omitted) (quoting Restatement (Second) of Conflict of Laws § 187(2) (Am. Law Inst. 1971)). In determining the "materially greater interest," the California Court of Appeal requires trial courts to decide "which state has a 'materially greater interest' in the determination of the issue *and* which state's interests would be more seriously impaired if its policy were subordinated to the policy of the other state." *Application Grp., Inc.*, 72 Cal. Rptr. 2d at 84–85 (emphasis added); *see also id.* at 86. The parting seeking application of the choice-of-law provision carries the burden to establish a substantial relationship between the desired state and the parties or to establish any other reasonable basis for the parties' choice-of-law; however, the burden shifts to the party opposing application of the choice-of-law provision to demonstrate that the provision would violate a fundamental policy of California. *1-800-Got Junk? LLC v. Superior Court*, 116 Cal. Rptr. 3d 923, 932 (Ct. App. 2010); *Yeiser Research & Dev. LLC*, 281 F. Supp. 3d at 1036.

## 2. Application of California's Choice-of-Law Standards

Here, three of the four Defendants signed Employment Agreements with a Philippine choice-of-law term whereas all four Defendants signed an EARCI with a California choice-of-law term. Plaintiff alleges that the Employment Agreements "included an [EARCI]." FAC ¶¶ 21, 30, 44, 51.

The Employment Agreements signed by De Lara, Evangelista, and Barrameda contain the following choice-of-law provision: "This Agreement will be governed and construed in accordance with the laws of the Republic of the Philippines." Doc No. 12-1 at 10 (De Lara); Doc. No. 12-2 at 10 (Evangelista); Doc. No. 12-8 at 10 (Barrameda). Mariano signed an Employment Agreement, which predated the versions signed by the other Defendants, containing the following choice-of-law language: "The Employee Handbook is a global document and where Philippine law differs from the terms set out in the Employee Handbook, Philippine law shall apply to your employment." Doc No. 12-9 at 3.[4] Despite the different Employment Agreements, each Defendants' EARCI contains the following provision: "13. **GOVERNING LAW** This Agreement will be construed in accordance with and governed by, the laws of the State of California as applied to transactions taking place wholly within California between California residents." Doc No. 12-1 at 15 (De Lara); Doc. No. 12-2 (Evangelista);[5] Doc. No. 12-8 at 19 (Barrameda); Doc. No. 12-9 at 7 (Mariano). Additionally, Plaintiff attached a "Confidential Information Agreement," signed by Barrameda, to its FAC that contains an

---

[4] Almost identical language exists in the Employment Agreements signed by the other three Defendants: "Note though that as the Employee Handbook is a global document, where Philippine law differs from the terms set out in the Employee Handbook, Philippine law shall apply to your employment." Doc No. 12-1 at 4 (De Lara); Doc. No. 12-2 at 4 (Evangelista); Doc. No. 12-8 at 4 (Barrameda).

[5] Plaintiff's exhibit attached to its FAC appears to be missing the page of the EARCI signed by Evangelista that would contain the choice-of-law provision that appears in the EARCI signed by the other Defendants. Defendants concede that the EARCI, "which all Individual Defendants executed, contains a California choice of law provision." Doc. No. 30-1 at 12. Accordingly, the Court finds that Evangelista's EARCI also contains the California choice-of-law provision.

20-cv-410-MMA (MSB)

additional choice-of-law provision: "This Agreement shall be governed by and construed in accordance with the laws of the State of California as applied to transactions taking place wholly within California and between California residents." Doc. No. 12-8 at 22.

Given the various choice-of-law provisions between the Employment Contracts and the EARCI, the Court must examine the language to find which one, if any, applies to the current action. Plaintiff alleges that each of the Defendants reside in the Philippines. FAC ¶¶ 4, 5, 7, 8.[6] The California choice-of-law provision within the EARCI applies to "to transactions taking place wholly within California between California residents." *E.g.*, Doc No. 12-1 at 15. Because Plaintiff alleges that Defendants reside in the Philippines, the Court finds the California choice-of-law provision inapplicable. In a footnote, Defendants assert that the different choice-of-law provisions over "the same contract to govern restrictive covenants" creates an ambiguity, which should be construed against Plaintiff so that the California provision controls. Doc. No. 38 at 9 n.1. The Court does not find an ambiguity when comparing the plain language of the California term to Plaintiff's allegations. Therefore, the Court is left with the Philippine choice-of-law provision.

Given the presence of a choice-of-law provision, the Court applies Philippine law regarding claims brought under the Employment Agreement—and included EARCI— unless the Restatement approach requires a different result. *See Bridge Fund Capital Corp.*, 622 F.3d at 1002 (quoting *Nedlloyd Lines B.V.*, 834 P.2d at 1152).

### i. Step 1: Substantial Relationship or Reasonable Basis Analysis

---

[6] Defendants argue that Plaintiff cannot reconcile its allegations that Defendants reside in the Philippines and currently work for Silanna Semiconductor North America, Inc., based in San Diego. Doc. No. 38 at 9. The Court finds this argument unavailing because its present analysis is focused on determining whether the chosen forum's law has a connection to the parties. Even if the Defendants only previously resided in the Philippines when they signed their Employment Agreements and EARCI, this alone satisfies the Court's present inquiry. *See infra* Section III.A.2.i.

Under the Restatement Approach, the Court must first determine "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V.*, 834 P.2d at 1152. Plaintiff alleges that Defendants all reside in the Philippines. FAC ¶¶ 4, 5, 7, 8. The Employment Agreements signed by De Lara, Evangelista, and Barrameda contain Philippine addresses on the first page. Doc No. 12-1 at 2; Doc. No. 12-2 at 2; Doc. No. 12-8 at 2. Mariano's Employment Agreement repeatedly mentions payment in Philippine currency. *See* Doc. No. 12-9 at 2–3. Moreover, Plaintiff's allegations suggest that Defendants worked in the Philippines, where they became "intimately familiar with [Plaintiff's] Philippine operations." FAC ¶¶ 18, 27, 41, 50; *see also id.* ¶¶ 59, 60; Doc. No. 12-1 at 2; Doc. No. 12-2 at 2; Doc. No. 12-8 at 2. Therefore, the Court finds that the Philippines has a substantial relationship to the parties and their transaction, and Defendants' alleged residence within the Philippines forms a reasonable basis for the Philippine choice-of-law provision. *See Application Grp., Inc.*, 72 Cal. Rptr. 2d at 84.

### ii. Step 2: Fundamental Policy Analysis

The Court must next determine whether Philippine law is contrary to "a fundamental policy of California." *See Nedlloyd Lines B.V.*, 834 P.2d at 1152 (footnote omitted). As a preliminary step in answering this inquiry, the Court must determine whether California and Philippine law conflict.

Philippine law allows restrictive covenants under a standard of reasonableness. In determining the validity of restrictive covenants, Philippine courts examine the surrounding circumstances. *Id.* Two main grounds for striking down a restraint of trade as void on public policy grounds are (1) "the injury to the public by being deprived of the restricted party's industry" and (2) "the injury to the party himself by being precluded from pursuing his occupation, and thus being prevented from supporting himself and his family." *Id.* (quoting *Ferrazzini v. Gsell*, G.R. No. 10712 (Aug. 10, 1916) (Phil.)).

20-cv-410-MMA (MSB)

Relying on authority from the United States, the Philippines places the burden to prove reasonableness of a restrictive covenant on the employer seeking to enforce the covenant:

> In cases where an employee assails a contract containing a provision prohibiting him or her from accepting competitive employment as against public policy, the employer has to adduce evidence to prove that the restriction is reasonable and not greater than necessary to protect the employer's legitimate business interests. The restraint may not be unduly harsh or oppressive in curtailing the employee's legitimate efforts to earn a livelihood and must be reasonable in light of sound public policy.

*Rivera v. Solidbank Corp.*, G.R. No. 163269 (Apr. 19, 2006) (Phil.) (first citing *Foti v. Cook*, Jr., 263 S.E.2d 430, 433 (Va. 1980); and then citing *Motion Control Sys., Inc. v. East*, 546 S.E.2d 424, 425–26 (Va. 2001)). The Philippines Supreme Court noted that "the determination of reasonableness is made on the particular facts and circumstances of each case." *Rivera*, G.R. No. 163269 (Phil.) (citing *Weber v. Tillman*, 913 P.2d 84, 90 (Kan. 1996)).

> Thus, in determining whether the contract is reasonable or not, the trial court should consider the following factors: (a) whether the covenant protects a legitimate business interest of the employer; (b) whether the covenant creates an undue burden on the employee; (c) whether the covenant is injurious to the public welfare; (d) whether the time and territorial limitations contained in the covenant are reasonable; and (e) whether the restraint is reasonable from the standpoint of public policy.

*Id.* (citing *Weber*, 913 P.2d at 90). In looking at the circumstances, the Philippines Supreme Court noted that "a non-involvement clause is not necessarily void for being in restraint of trade as long as there are reasonable limitations as to time, trade, and place." *Tiu v. Platinum Plans Phil., Inc.*, G.R. No. 163512 (Feb. 28, 2007) (Phil.).

15

In contrast, California law generally disfavors restrictive covenants. The relevant California statute provides that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. "Section 16600 expresses California's strong public policy of protecting the right of its citizens to pursue any lawful employment and enterprise of their choice." *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 239 Cal. Rptr. 3d 577, 587 (Ct. App. 2018) (citations omitted); *see also Stryker Sales Corp.*, 231 F. Supp. 3d at 621 (noting further that § 16600 embodies a fundamental public policy and that "it should override contractual choice-of-law provisions at least with respect to such restrictive covenants."). "California long ago rejected the so-called 'rule of reasonableness' when it enacted . . . the predecessor sections to Business and Professions Code sections 16600 through 16602." *Ret. Grp. v. Galante*, 98 Cal. Rptr. 3d 585, 589 (2009). Rather than the reasonableness approach adopted by the Philippines, California emphasizes that "*[t]he interests of the employee in his own mobility and betterment are deemed paramount* to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change." *Application Grp., Inc.*, 72 Cal. Rptr. 2d at 85 (emphasis added) (quoting *Diodes, Inc. v. Franzen*, 67 Cal. Rptr. 19, 26 (Ct. App. 1968)).

After analyzing Philippine and California law, the Court finds a genuine conflict between their approaches to restrictive covenants. *Compare Rivera*, G.R. No. 163269 (Phil.) (adopting the reasonableness approach), *with Ret. Grp.*, 98 Cal. Rptr. 3d at 592 (rejecting the reasonableness approach). The Court additionally finds that Philippine law is contrary to a fundamental policy of California. California's clear statutory language of § 16600 is coupled with longstanding case law supporting the primacy of employees to pursue the work of their choice. *See, e.g.*, *Edwards v. Arthur Andersen LLP*, 189 P.3d

285, 290–91 (Cal. 2008); *AMN Healthcare, Inc.*, 239 Cal. Rptr. 3d at 587; *Ret. Grp.*, 98 Cal. Rptr. 3d at 589–90; *Application Grp., Inc.*, 72 Cal. Rptr. 2d at 85.

Finding that Philippine law fundamentally conflicts with California law, the Court must now assess whether California has a materially greater interest than the Philippines in its the approach to restrictive covenants. *See Nedlloyd Lines B.V.*, 834 P.2d at 1152 (quoting Restatement (Second) of Conflict of Laws § 187(2)). Contrasting the Philippines's reasonableness-balancing approach with California's strict rule disfavoring restrictive covenants, the Court finds that California's law possesses a materially greater interest. Although the Philippines's approach gives leeway for contracting parties to draft restrictive covenants, such leniency would jeopardize the statutory intent of the California Legislature in prioritizing its commitment to the paramount interests of the employee. *See Application Grp., Inc.*, 72 Cal. Rptr. 2d at 85 (quoting *Diodes, Inc.*, 67 Cal. Rptr. at 26). Thus, the Court finds that California has a materially greater interest and its law would be more seriously impaired if it were not followed.

### iii. Step 3: Lack of an Applicable Choice-of-Law Provision and the Governmental Interest Analysis

Despite the Philippines having a substantial relationship to Defendants and there being a reasonable basis for using Philippine law, the Court finds that California has a materially greater interest than the Philippines in determining the enforceability of the restrictive covenants at issue, and California's interests would be more seriously impaired if subordinated to Philippine law.

The Court is thus left without a choice-of-law provision and must fall back upon the foundational "governmental interest analysis" to (1) determine the relevant law of each potentially affected jurisdiction; (2) determine whether the law of the potentially affected jurisdictions conflict; and (3) if there is a genuine conflict, then determine whether which jurisdiction's interests would be more impaired if the Court applied the other jurisdiction's law. *Kearney*, 137 P.3d at 922 (quoting *Bernhard*, 546 P.2d at 723);

*see also Stryker Sales Corp.*, 231 F. Supp. 3d at 619. The Court finds that California and the Philippines are both potentially affected jurisdictions given Plaintiff's allegations, the contracts attached to the complaint, and the residences of the parties. As addressed above, the Court has already found that a genuine conflict exists between California and Philippine law. *See supra* Section III.A.2.ii. Additionally, given the similar analysis applied in assessing each jurisdiction's fundamental policies and material interest in those policies, *see Application Grp., Inc.*, 72 Cal. Rptr. 2d at 84; *Stryker Sales Corp.*, 231 F. Supp. 3d at 620, the Court finds the same result applies in this present analysis: California's interests would be more impaired if Philippine law were applied. *See supra* Section III.A.2.ii. Accordingly, the Court applies California law. [7]

### 3. Issue Regarding Non-California-Residing Employee – *Application Group, Inc. v. Hunter Group, Inc.*

Plaintiff argues that even if applying Philippine law would conflict with California's fundamental public policy, this is not a sufficient basis for the Court to decline to enforce the parties' choice-of-law provision. Doc. No. 34 at 19–20. Plaintiff points to *Application Group, Inc. v. Hunter Group, Inc. See id.* at 20. Plaintiff argues that *Application Group, Inc.* stands for the proposition that California policy regarding restrictive covenants is to protect California citizens and, thus, § 16600 and its underlying policies do not apply where a California-based employer recruits employees from outside California. *Id.* at 20–21. Plaintiff asserts California's policy goal to protect employees of

---

[7] The Court remains mindful that California's choice-of-law rules "apply whether the dispute arises out of contract or tort, and *a separate conflict of laws inquiry must be made with respect to each issue in the case.*" *Washington Mut. Bank, FA*, 15 P.3d at 1081 (emphasis added) (citing *Application Grp., Inc.*, 72 Cal. Rptr. 2d at 82). Plaintiff's tort causes of action arise from Plaintiff's underlying contractual relationship with Defendants. Application of Philippine law to the tort causes of action—after applying California law to the contract cause of action—could undermine and circumvent California's fundamental policy regarding restrictive covenants. Therefore, to maintain consistent application of California's fundamental policy and to discourage artful pleading and motion practice, the Court also applies California law to Plaintiff's tort causes of action.

20-cv-410-MMA (MSB)

California employers that provide services in California diminishes when employment is outside of California. *Id.* at 21. Plaintiff's argument is unavailing. The Court proceeds by outlining *Application Group, Inc. v. Hunter Group* and its impact on the present action.

In *Application Group, Inc.*, the California Court of Appeal addressed the following issue:

> [W]hether California law may be applied to determine the enforceability of a covenant not to compete, in an employment agreement between an employee [Ms. Pike] who is not a resident of California and an employer [Hunter] whose business is based outside of California, when a California-based employer [AGI] seeks to recruit or hire the nonresident for employment in California.

*Application Grp., Inc.*, 72 Cal. Rptr. 2d at 79. After holding that the trial court did not abuse its discretion in finding that AGI's claims were judiciable, the Court of Appeal agreed with the trial court that California law may be applied to determine the enforceability of the restrictive covenant[8] between the non-California-resident and the non-California-based employer when the California-based employer "seeks to recruit or hire the nonresident for employment in California." *Id.* at 75. However, the Court of Appeal held that the trial court abused its discretion when it granted declaratory relief in

---

[8] As restated by the Court of Appeal, Ms. Pike's restrictive covenant provided the following:

> "During the term of [her] employment, and for a period of [one year] after the date of its termination, [Pike] agrees that [she] will not render, directly or indirectly, any services of an advisory or consulting nature, whether as an employee or otherwise, to any business which is a competitor of [Hunter]." The noncompetition clause does not apply where the employee is "terminated by [Hunter] for economic or budgetary reduction purposes." Pike's employment contract expressly provided it was to be "governed by and construed in accordance with the laws of the State of Maryland."

*Id.* at 76.

favor of the employee, "whose individual claims became moot during the pendency of the proceedings below." *Id.*

In analyzing the "strong public policy" surrounding § 16600, the court emphasized that § 16600 "has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when the employment has terminated, unless necessary to protect the employer's trade secrets." *Id.* at 85 (quoting *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 27 Cal. Rptr. 2d 573, 577 (Ct. App. 1994)). *But see infra* Section III.B.1.i (finding that, in fact, there is no trade secret exception to § 16600). Based on this policy, the court explained:

> It follows that *California has a strong interest in protecting the freedom of movement of persons whom California-based employers (such as AGI) wish to employ* to provide services in California, *regardless of the person's state of residence* or precise degree of involvement in California projects, and we see no reason why these employees' interests should not be "deemed paramount to the competitive business interests" of out-of-state as well as in-state employers.

*Id.* at 85 (emphasis added). This same interest is "all the more important" when used by a California employer shielding itself from "unfair competition" allegations because California employers need to be able to compete for the most skilled employees, "wherever they may reside." *Id.*

After finding that Ms. Pike did not perform any "unique services" or attempt to exploit Hunter's trade secrets, the court held that California had a materially greater interest in applying its laws and its interests would be more impaired if the Court applied Maryland law. *Id.* at 86. The court noted that it could not ignore AGI's—the California employer—interests because Hunter's restrictive covenant term "affects employment and business opportunities in California" and Hunter had significant California contacts. *Id.* at 88. In terms of the recruited employee's residence, the court stated:

> [T]he enforceability of Hunter's noncompetition covenant does not turn on whether the recruited employee physically resides in California. The concept of "employment in California" is broader than that, at least in the expansive and dispersed industry with which we deal in this case. It must also take into account the location of the employer, and the location of the employer's vendors and customers. Viewing the larger picture, the trial court did not err in concluding that an employee of a California-based employer, who performs services for California-based customers, is "employed in California" and, thus, "engage[d] in a business or profession" in California, so as to enjoy the protection of section 16600.

*Id.* (footnote omitted). In sum, an out-of-state employee working for a California employer can be considered "employed in California" to gain the benefit of California's statutory protections against restrictive covenants. *See id.*

Although Plaintiff alleges Defendants reside in the Philippines, FAC ¶¶ 4, 5, 7, 8, Plaintiff is incorporated and has a "regular and established place of business" in California, *id.* ¶ 1. Moreover, Plaintiff alleges that Silanna also has an established place of business in California and "target[s], recruit[s], and hire[s]" Plaintiff's employees. *Id.* ¶¶ 2, 15, 17. Given Plaintiff's and Silanna's extensive contacts with California and Defendants' contact with both California companies, the larger picture reveals that Defendants are employed in California as to avail themselves of section 16600's protection. *See Application Grp., Inc.*, 72 Cal. Rptr. 2d at 88.

### 4. Conclusion

Accordingly, the Court is left with California law. The Court will apply California substantive law to determine whether Plaintiff states any plausible nonfederal claims.

## B. Cases of Action

### 1. Breach of Contract

Plaintiff's first cause of action is breach of contract. FAC ¶¶ 66–83. Plaintiff alleges Defendants breached the clauses involving (1) nonsolicitation and noncompetition and (2) confidentiality. *See* FAC ¶¶ 76, 77, 79, 80.

A breach of contract claim under California law requires "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to plaintiff." *EPIS, Inc. v. Fidelity & Guaranty Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (Cal. 1968)); *see also CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Ct. App. 2008).

The Court addresses each alleged breach in turn.

### i. Breach of the Nonsolicitation and Noncompetition Clauses

Plaintiff alleges that Defendants breached their contractual nonsolicitation and noncompetition obligations. *See* FAC ¶¶ 76, 77, 79, 80. Defendants argue that Plaintiff fails to allege a plausible claim against Defendants because the noncompetition and nonsolicitation agreements are unenforceable. *See* Doc. No. 30-1 at 13–14. Defendants further contend that Plaintiff does not allege specific facts showing Defendants took or disseminated confidential or trade secret information. *See id.* at 14–15. In opposition, Plaintiff asserts that the restrictive covenants are enforceable even under California law. *See* Doc. No. 34 at 21–25.

As stated above, California law provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. As noted by the California Supreme Court: "In sum, following the Legislature, this court generally condemns noncompetition agreements." *Edwards*, 189 P.3d at 291. California courts have "have been clear in their expression that section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat." *Id.* at 293 (quoting *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1042 (N.D. Cal. 1990)).

Here, Defendants' Employment Agreements contain the following nonsolicitation and noncompetition clauses:

## XI. **Non-Solicitation and Non-Competition**

### Non-Solicitation

You agree that, during your employment and for a period of twelve (12) months after your separation for any reason, you shall not, for any reason, whether on your own behalf, as an owner, employee, consultant, agent, partner, shareholder, co-venturer or otherwise, or on behalf of any other person, corporation, partnership, venture or any other entity or form of business, or otherwise, directly or indirectly:

(a)     interfere with, solicit or hire (or attempt to interfere with, solicit or hire) any officers, employees, representatives or agents of the Company or any of its subsidiaries; or

(b)     induce or encourage (or attempt to induce or encourage) any officer, employee, representative or agent of the Company or any of its subsidiaries (i) to leave the employ or service of the Company or any of its subsidiaries, or (ii) to violate the terms of their contract with the Company or any of its subsidiaries; or

(c)     provide the Company's business to any client of the Company which you had direct contact, direct supervisory responsibility or access to confidential information, nor will you solicit, induce, or attempt to induce any such client to: (i) stop doing business with or through the Company, or (ii) do business with any other person, firm, partnership, corporation or other entity that provides products or services materially similar to those provided by the Company.

### Non-Compete

You expressly agree that during your employment and for a period of twelve (12) months from the effective date of the termination of your employment with the Company, for any reason whatsoever, whether voluntary or involuntary, you will not:

(a)     whether on your own behalf, as an owner, employee, consultant, agent, partner, shareholder, co-venturer or otherwise, or on behalf of any other person, corporation, partnership, venture or any other entity or form of business, or otherwise, directly or indirectly:

(i)     form, acquire, finance, assist, support, become associated with, or engage or participate in any business in competition with the Company; or

(ii)    sell or provide any service or product that is competitive or potentially competitive to any product or service that the Company sells, provides or develops at any time; or

(iii)   for the purpose of conducting or engaging in any competitive business, (A) call upon, solicit, advise or otherwise do (or attempt to call upon, solicit, advise or do) business with any suppliers, customers or accounts of the Company or any of its subsidiaries, or (B) take away or interfere (or attempt to take away or interfere with) any customer, trade, business or patronage of the Company or any of its subsidiaries.

(b)     be employed or engaged, directly or indirectly, either as principal, agent, employee or in any capacity, by any client of the Company, former or present, whose project you have been assigned to or worked on in the course of your employment with the Company; or

(c)     be employed or engaged, directly or indirectly, in any capacity whatsoever, by any competitor of the Company, in the Philippines or in any other country or area where the Company is operating, doing business or is engaged in any business project.

*E.g.*, Doc. No. 12-1 at 6–8 (De Lara).  However, Mariano's Employment Agreement differs from the other Defendants' contracts; his does not contain these above clauses.  *See* Doc. No. 12-9 at 2–3.  Plaintiff's allegations against Mariano are limited to his purported breach of the EARCI-specific clauses.  *See* FAC ¶ 80.

The EARCI—signed by all four Defendants—contains the following clauses:

### 5. **Competitive Employment**
During the term of my employment with the Company, I will not engage in any employment, consulting, or other activity in any business competitive with the Company without the Company's written consent.

### 6. **Non-solicitation**
During the term of my employment with the Company and for a period of two (2) years thereafter, I will not solicit or encourage or cause others to solicit or encourage, any employees of the Company to terminate their employment with the Company.

*E.g.*, Doc. No. 12-1 at 14 (De Lara).

Despite the language and legislative policy of § 16600, Plaintiff argues that the nonsolicitation clause is valid because it is "limited in duration and designed to protect [Plaintiff's] trade secrets." Doc. No. 34 at 22. Plaintiff asserts that the noncompetition clause is also valid because it is "necessary to protect an employer's trade secrets or confidential information" and falls under the "'trade secret exception' to section 16600." *Id.* at 24, 25.

Noting the tension between the mandates of § 16600 and the need to protect trade secrets, the parties debate the existence of the so-called trade secret exception to § 16600. The California Court of Appeal appears to be split as to its treatment of trade secrets in the context of restrictive covenants. On one hand, some decisions have found that to the extent that an exception applies, it applies in the context of a tortious wrong independent of any contractual relationship. *See Ret. Grp.*, 98 Cal. Rptr. 3d at 593. In *The Retirement Group v. Galante*, the California Court of Appeal determined the following distinction between contract and tort:

We distill from the foregoing cases that section 16600 bars a court from specifically enforcing (by way of injunctive relief) a *contractual* clause

purporting to ban a former employee from soliciting former customers to transfer their business away from the former employer to the employee's new business, but a court may enjoin *tortious* conduct (as violative of either the Uniform Trade Secrets Act and/or the Unfair Competition Law) by banning the former employee from using trade secret information to identify existing customers, to facilitate the solicitation of such customers, or to otherwise unfairly compete with the former employer. Viewed in this light, therefore, the conduct is enjoinable not because it falls within a judicially-created "exception" to section 16600's ban on contractual nonsolicitation clauses, but is instead enjoinable because it is wrongful independent of any contractual undertaking.

*Id.* Thus, the court reasoned "it is not the *solicitation* of the former employer's customers, but is instead the *misuse of trade secret information*, that may be enjoined." *Id.* at 593. On the other hand, the court has also held that "under *Edwards*, Business and Professions Code section 16600 generally prohibits the enforcement of a nonsolicitation agreement in all cases in which the trade secret exception does not apply." *Wanke, Indus., Commercial, Residential, Inc. v. Keck*, 147 Cal. Rptr. 3d 651, 670 (Ct. App. 2012) (referring to *Edwards*, 189 P.3d 285, which "[did not] address the applicability of the so-called trade secret exception to section 16600 . . . .").

However, because *Edwards*' did not involve the "so called trade secret exception," *Edwards*, 189 P.3d at 291 n.4, its statements regarding the existence or the applicability of a trade secret exception is dicta. Additionally, *Edwards* noted that "[w]e conclude that section 16600 prohibits employee noncompetition agreements unless the agreement falls within a *statutory exception*." *Edwards*, 189 P.3d at 291 (emphasis added) (citing Cal. Bus. & Prof. Code § 16600); *see also Dowell v. Biosense Webster, Inc.*, 102 Cal. Rptr. 3d 1, 9 (2009) (same). In detailing how California Courts have not embraced the "Ninth Circuit's narrow-restraint exception," the *Edwards* court stated that "[we] leave it to the Legislature, if it chooses, either to relax the statutory restrictions or adopt additional exceptions to the prohibition-against-restraint rule under section 16600." *Id.* at 293. This

language, the explicit statutory language of "[e]xcept as provided in this chapter," and the California Legislature's intent plainly exclude judicially-created exceptions to § 16600. Cal. Bus. & Prof. Code § 16600.

Therefore, this Court declines to find that a trade secret exception to § 16600 exists to the extent that Plaintiff alleges a breach of contract cause of action. The nonsolicitation and noncompetition clauses are unenforceable under § 16600 and overly broad. Plaintiff cannot state a plausible claim based on Defendants' alleged breach of those clauses but may seek a remedy based on tortious misuse of trade secret information independent from Plaintiff's contractual relationship with Defendants. *See Conversion Logic, Inc. v. Measured, Inc.*, No. 2:19-cv-05546-ODW (FFMx), 2019 WL 6828283, at *5 (C.D. Cal. Dec. 13, 2019).

### ii. Breach of the Confidentiality Clause

Plaintiff alleges that Defendants breached their confidentiality obligations. *See* FAC ¶¶ 76, 77, 79, 80. Defendants argue that Plaintiff's allegations regarding this breach "[are] completely lacking in specific factual allegations detailing what specific information was taken, as well as when or how it was improperly disclosed. Instead, the claim is predicated entirely on the wholly-rejected doctrine of 'inevitable disclosure.'" Doc. No. 30-1 at 14. Plaintiff responds that it does not rely on the inevitable disclosure doctrine. Doc. No. 34 at 15. It further asserts that Defendants "breached the confidentiality provisions not only by knowingly subjecting Power Integrations' trade secrets to misappropriation, but also by divulging and misusing Power Integrations' confidential human resource information when they conspired with Silanna, [] Penbrothers, and one another to target and solicit Power Integrations' engineers." Doc. No. 34 at 16.

The Employment Agreement contains the following confidentiality clause:

### VIII. **Confidentiality**

You acknowledge and recognize that the information, including, but not limited to the Company's trade secrets, technical data, marketing techniques, human resources, training materials, customer lists, location selection, pricing, client contracts, methods of doing business, and the like, and the similar information of its clients and its clients' customers, including, without limitation, credit card, calling card, address, telephone number or other personal information ("Confidential Information") are special, valuable and unique.  As a material inducement to the Company to enter into this contract and in consideration of the compensation the Company pays you under this contract, you agree:

a)      That the Confidential Information is the sole and exclusive property of the Company (or a third party providing the information to the Company).  The Company (or the third party, if applicable) owns all worldwide rights to the information under patent, copyright, trade secret, confidential information or other property right.

b)      That the Company's disclosure of Confidential Information to you does not confer upon you any license, interest or rights of any kind in or to the Confidential Information.  You may use the Confidential Information solely to benefit the Company and only during your employment.

c)      To safeguard the Confidential Information against disclosure to others.

d)      Not to directly or indirectly or in any manner, divulge, disclose or communicate the Confidential Information to others, without the express written permission of the Company, except that:

i)      which you can demonstrate by written records was previously known;

ii)     which are now, or become in the future, public knowledge other than through your acts or omissions; and

iii)    which are lawfully obtained by you from sources independent of the Company.

e)     Not to, directly or indirectly, in any form, by any means or for any purpose, reproduce, distribute, transmit, reverse engineer, de-compile, disassemble or transfer, or use, the Confidential Information, or any portion of either, to benefit yourself or any third party, or to cause any of the foregoing to happen.

f)     Not to utilize schemes or formulas of the Company, or any variation or approximation thereof, for your own use or purposes, either by itself or in concert with others;

g)     That you will return the Confidential Information that is in your possession or control to the Company, together with all copies, documents, records, notebooks, programs and similar items, collections and materials (in writing, electronic or otherwise) that relate to the Confidential Information, immediately

(i)     upon the Company's request, and/or

(ii)     upon the termination of your employment even without the Company's request.

h)     That the obligations contained herein will remain in effect during and after your employment with the Company.

*E.g.*, Doc. No. 12-1 at 5–6 (De Lara).  Mariano's Employment Agreement differs from the other Defendants' contracts; his does not contain these above clauses.  *See* Doc. No. 12-9 at 2–3.  Plaintiff's allegations against Mariano are limited to his purported breach of the EARCI-specific clauses.  *See* FAC ¶ 80.

The EARCI—signed by all four Defendants—contains the following clause:

2. **Confidentiality**
I will maintain in confidence and will not disclose or use, either during or after the term of my employment without the prior express written consent of the Company, any proprietary or confidential information or know-how belonging to the Company ("Proprietary Information"), whether or not it is

in written or permanent form, except to the extent required to perform duties on behalf of the Company in my capacity as an employee.  Proprietary information refers to any information, not generally known in the relevant trade or industry, which was obtain from the Company, or which was learned, discovered, developed, conceived, originated or prepared by me in the scope of my employment.  Such Proprietary Information includes, but is not limited to, software, technical and business information relating to the Company's inventions or products, research and development, production processes, manufacturing and engineering processes, machines and equipment, finances, customers, marketing and production and future business plans and any other information which is identified as confidential by the Company.  Upon termination of my employment or at the request of my supervisor before termination, I will deliver to the Company all written and tangible material in my possession incorporating the Proprietary Information or otherwise relating to the Company's business.  These obligations with respect to Proprietary Information extend to information belonging to customers and suppliers of the Company who may have disclosed such information to me as the result of my status as employee of the Company.

*E.g.*, Doc. No. 12-1 at 12 (De Lara).

Plaintiff alleges the existence of a confidentiality provision in Defendants' Employment Agreements and EARCI.  *See, e.g.*, Doc. No. 12-1 at 5–6, 12.  Arguing that it properly alleges breach of the confidentiality provision, Doc. No. 34 at 15, Plaintiff points to the following language in its FAC:

Upon information and belief, De Lara gained employment or engagement with Silanna, either directly or through its agent Penbrothers, as a result of his intimate knowledge and possession of Power Integrations Confidential Information and Power Integrations Proprietary Information regarding Power Integrations' new and future product plans and designs, including and especially Power Integrations Future Product Trade Secrets, and by knowingly subjecting Power Integrations Confidential Information and Power Integrations Proprietary Information, including and especially Power Integrations Future Product Trade Secrets, to misappropriation by Silanna.

FAC ¶ 25.  Plaintiff pleads the same allegation against Evangelista, Barrameda, and Mariano.  *See* FAC ¶¶ 34, 48, 54.  Essentially, Plaintiff alleges that Defendants gained new employment as a result of their knowledge learned through employment with Plaintiff.  Plaintiff also pleads and argues that Defendants "knowingly subject[ed] [Plaintiff's] trade secrets to misappropriation."  Doc. No. 34; *see also* FAC ¶¶ 25, 34, 48, 54, 81.  However, Plaintiff's allegations are vague and conclusory, devoid of facts showing *how* Defendants breached the confidentiality provisions.  Plaintiff appears to argue that Defendants' mere knowledge of Plaintiff's confidential information while employed at another company constitutes misappropriation of the information and disclosure to the new company.  However, California rejects the inevitable disclosure doctrine.[9]  *Whyte*, 125 Cal. Rptr. 2d at 281, 293.  Thus, mere knowledge of confidential information by employees who work for the previous employer's competitor is insufficient to form the basis of a breach of contract cause of action.  Plaintiff fails to show how Defendants used or disclosed confidential information, or otherwise breached the confidentiality contract terms.  Therefore, the Court finds Plaintiff fails to plausibly allege that Defendants breached the confidentiality clauses in their contracts.

### iii. Conclusion

Accordingly, because the Court finds Plaintiff's nonsolicitation and noncompete clauses are unenforceable, and Plaintiff fails to allege a breach of the confidentiality

---

[9]  The "inevitable disclosure doctrine"

> permits a trade secret owner to prevent a former employee from working for a competitor despite the owner's failure to prove the employee has taken or threatens to use trade secrets.  Under that doctrine, the employee may be enjoined by demonstrating the employee's new job duties will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets.

*Whyte v. Schlage Lock Co*., 125 Cal. Rptr. 2d 277, 281 (Ct. App. 2002).

20-cv-410-MMA (MSB)

clauses, the Court **DISMISSES** Plaintiff's breach of contract cause of action without prejudice.

### 2. Trade Secret Misappropriation

Plaintiff's second cause of action is trade secret misappropriation under 18 U.S.C. § 1836. FAC ¶¶ 84–103. Defendants argue that Plaintiff does not plead with sufficient particularity and, even if it identifies a trade secret, it fails to provide sufficient facts to demonstrate misappropriation. Doc. No. 30-2 at 15; Doc. No. 38 at 14. Plaintiff responds that it does not have to plead with particularity and otherwise pleads sufficient facts to bolster its claim. *See* Doc. No. 34 at 26–28.

To plead a trade secret misappropriation cause of action under the Defend Trade Secrets Act ("DTSA"), a plaintiff must allege the following: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019) (quoting *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018)). The DTSA creates a civil cause of action for owners of trade secrets that are misappropriated "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DTSA defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" so long as the owner (a) "has taken reasonable measures to keep such information secret" and (b) "derives independent economic value" from being secret. 18 U.S.C. § 1839(3). The DTSA defines "misappropriation" as "(a) 'acquisition of a trade secret' by a person who knows or should know the secret was improperly acquired or (b) 'disclosure or use of a trade secret of another without express

32

or implied consent.'" *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *3 (N.D. Cal. Apr. 24, 2017) (quoting 18 U.S.C. § 1839(5)). In sum, the DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Id.* at *4 (citing 18 U.S.C. § 1839(5)).

In applying the Rule 12(b)(6) standard to DTSA allegations, the Court applies general pleading standards under Rule 8, which require plausibility as opposed to particularity. The Court finds that the DTSA does not incorporate California's Uniform Trade Secrets Act pleading standard requiring particularity. *Physician's Surrogacy, Inc. v. German*, No. 17CV0718-MMA (WVG), 2017 WL 3622329, at *9 (S.D. Cal. Aug. 23, 2017) (citing *David Bohrer, Threatened Misappropriation of Trade Secrets: Making A Federal (DTSA) Case Out of It*, 33 Santa Clara High Tech. L.J. 506, 521 (2017)); *see also Rockwell Collins, Inc. v. Wallace*, No. SACV1701369AGJCGX, 2017 WL 5502775, at *2 (C.D. Cal. Nov. 10, 2017) (applying a Rule 8 standard). *But see AlterG, Inc.*, 388 F. Supp. 3d at 1144 n.1 (applying a Rule 9(b) standard). Although "elements of a trade secret misappropriation claim under the DTSA are substantially similar to those under older state statutes," *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018), the similarity pertains to the *substantive* elements and does not pertain to the *procedural* pleading standard. Thus, absent any explicit language in the DTSA requiring a heightened pleading standard or allegations of fraud or mistake, the Court finds that it must apply the general rules of pleading under Rule 8.

### i. Ownership of Trade Secret

Defendants argue that Plaintiff fails to provide "facts alleging a specific trade secret." Doc. No. 30-1 at 16. They assert Plaintiff merely provides a "laundry list of items that do not meaningfully define the trade secrets at issue." *Id.* Plaintiff responds that it identifies the technology in question as "high-voltage power conversion technology" as well as the specific items that relate to the technology. Doc. No. 34 at 26.

20-cv-410-MMA (MSB)

Plaintiff defines "Power Integrations Future Product Trade Secrets" as follows:

> Power Integrations' *future product plans and designs*, including but not limited to product specifications, product forecasts, definitions, designs, research and development, patentable technologies, particularized costing information, bill of materials, customer acquisition, business opportunities and strategies, marketing and sales projections, and business plans relating to Power Integrations' new and future products

FAC ¶ 18 (emphasis added). Alone, this "future product plans and designs" and its subsequent definition is insufficient to place Defendants on notice of the trade secret(s) in dispute. Although Plaintiff argues in opposition that the technology at issue is "high-voltage power conversion technology," Doc. No. 34 at 26 (quoting FAC ¶ 14), this argument does not track with its allegations. Plaintiff does not allege that the trade secret is high-voltage power conversion technology. Rather, it alleges:

> Power Integrations is the leader in power conversion technology. An owner of over 500 patents, Power Integrations is a leading innovator in semiconductor technologies for high-voltage power conversion and a leading supplier of cutting-edge power technologies. Power Integrations' products are key building blocks in the clean-power ecosystem, enabling the generation of renewable energy as well as the efficient transmission and consumption of power in applications ranging from milliwatts to megawatts.

FAC ¶ 14; *see also id.* ¶ 85. This merely provides background on Plaintiff's business and does not allege a trade secret at issue.

Plaintiff's broad and vague statements regarding "new and future products," *id.* ¶ 85, do not provide "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570. Even under a general pleading standard, Plaintiff must allege a specific trade secret at issue. Its subsequent list purporting to specify the types of future product plans and designs at issue merely provides a conclusory list of the "forms and

types" of trade secrets actionable under the DTSA. *See* 18 U.S.C. § 1839(3). This list does not salvage Plaintiff's cause of action. The Court does not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts*, 812 F.2d at 1177 (quoting *W. Min. Council*, 643 F.2d at 624); *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

Plaintiff's allegations fail to provide adequate notice of the trade secret(s) at issue and, thus, do not satisfy Rule 8 pleadings standards. *See Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017).

### ii. Misappropriation of Trade Secret

Defendants further argue that Plaintiff has not adequately pleaded misappropriation. Doc. No. 30-1 at 18. Defendants state that Plaintiff merely alleges that Defendants were exposed to trade secrets and then were employed by Silanna as a result of their knowledge. *Id.* Plaintiff responds that it has alleged "facts sufficient to plausibly show that Individual Defendants ***threatened*** the misappropriation of [Plaintiff's] trade secrets." Doc. No. 34 at 27.

The DTSA permits a court to enjoin "any actual or threatened misappropriation." 18 U.S.C. § 1836(b)(3)(A)(i). Both state and federal courts in California have held that a plaintiff must prove more than a defendant's mere possession of trade secrets. *E.g.*, *Pellerin v. Honeywell Int'l*, Inc., 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012); *Cent. Valley Gen. Hosp. v. Smith*, 75 Cal. Rptr. 3d 771, 792 (Ct. App. 2008). Threatened misappropriation may occur under several variations: (1) a defendant possesses trade secrets and "actually has misused or disclosed some of those trade secrets in the past"; (2) a defendant possesses trade secrets and "intends to improperly use or disclose some of those trade secrets"; and (3) a defendant possesses trade secrets and "wrongly refuses to return the trade secrets after a demand for their return has been made." *Cent. Valley Gen. Hosp.*, 75 Cal. Rptr. 3d at 791–92. However, "the issuance of an injunction based on a

claim of threatened misappropriation *requires a greater showing than mere possession* by a defendant of trade secrets where the defendant acquired the trade secret by proper means." *Id.* at 792 (emphasis added).

Even if Plaintiff adequately pleaded a trade secret, Plaintiff fails to plead facts showing (1) improper acquisition, (2) disclosure without consent, or (3) use without consent. Plaintiff pleads the following type of conduct throughout its FAC:

> Upon information and belief, De Lara gained employment or engagement with Silanna, either directly or through its agent Penbrothers, as a result of his intimate knowledge and possession of Power Integrations Confidential Information and Power Integrations Proprietary Information regarding Power Integrations' new and future product plans and designs, including and especially Power Integrations Future Product Trade Secrets, and by knowingly subjecting Power Integrations Confidential Information and Power Integrations Proprietary Information, including and especially Power Integrations Future Product Trade Secrets, to misappropriation by Silanna.

FAC ¶ 25; *see also id.* ¶¶ 34, 48, 54. As noted above, these allegations are vague and conclusory, and merely demonstrate that Defendants had knowledge of Plaintiff's operations. Defendants' mere knowledge of Plaintiff's alleged trade secrets is insufficient to constitute misappropriation. Because the Court cannot presume the transfer of trade secret information occurs simply because Defendants possess it, Plaintiff must satisfy its pleading burden by showing *how* improper acquisition, disclosure, or use occurred or is threatened. *See Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1027 (E.D. Cal. 2011).

Plaintiff points to suspicious circumstances surrounding Defendants' resignation from employment with Plaintiff that could indicate threatened misappropriation through disclosure or use. *See* Doc. No. 34 at 28. For example, Plaintiff pleads the following:

20-cv-410-MMA (MSB)

45.     In or about February 2019, Barrameda resigned from his employment with Power Integrations, effective March 2, 2019, purportedly to join Infineon Technologies.

46.     Upon information and belief, Barrameda used Infineon Technologies as a decoy, lied about his employment with Infineon and started working for Silanna either as an employee of Silanna or as an employee of Penbrothers on assignment to work for Silanna in March 2019.

[. . . .]

95.     Upon information and belief, to conceal Silanna's true identity, Silanna conspired with Penbrothers and developed a scheme such that former key engineers of Power Integrations, including De Lara and Evangelista, were ostensibly hired and employed by Penbrothers and then assigned to Silanna.

96.     Upon information and belief, to conceal the true identity of Barrameda's new employer, Silanna conspired with Barrameda, either directly or through its agent Penbrothers, and developed a scheme such that Barrameda appeared to be joining Infineon Technologies after his separation from Power Integrations where in fact he was to be employed or engaged by Silanna.

FAC ¶¶ 45–46, 95–96.  Plaintiff argues that it has sufficiently alleged "Defendants' suspicious conduct leading up to the departure."  Doc. No. 34 at 28.

The Court finds that Barrameda's alleged conduct of lying about his employment with Infineon Technologies constitutes circumstantial evidence that he is in possession of Plaintiff's sensitive information and a likeliness that he intends to use or disclose that information.  *See Shippers, a Div. of Illinois Tool Works, Inc. v. Fontenot*, No. 13CV1349 JLS (MDD), 2013 WL 12092056, at *4 (S.D. Cal. Sept. 23, 2013) (analyzing the California Uniform Trade Secrets Act).  As to the other Defendants, Plaintiff does not sufficiently allege that they intend or are likely to use or disclose sensitive information. Defendants' contacts with Penbrothers is less suspicious because Penbrothers is a

"staffing and office solution provider," FAC ¶ 16, that reasonably would help employers like Silanna staff their offices.

Therefore, the Court finds that Plaintiff has *potentially* pleaded threatened misappropriation against Barrameda *if* it can adequately allege a trade secret upon being granted leave to amend its FAC. Regarding De Lara, Evangelista, and Mariano, Plaintiff fails to allege enough facts to constitute actual or threatened misappropriation.

### iii. Damage

Neither party discusses the damages element of the DTSA claim. Plaintiff alleges the following:

> 97. Upon information and belief, Defendants have used Power Integrations' trade secrets of substantial and economic value to allow Silanna to unfairly compete with Power Integrations in the market for power conversion products.
>
> 98. Defendants' current and continued misappropriation of Power Integrations' trade secrets is reckless and malicious. Defendants know of the confidentiality obligations and restrictions on use and disclosure of the trade secrets, by which De Lara, Evangelista, Barrameda, Mariano, and Hodge agreed to abide.
>
> 99. As a direct and proximate result of Defendants' current and continued misappropriation of Power Integrations' trade secrets, Power Integrations will suffer imminent and irreparable harm.
>
> 100. Unless enjoined by this Court, Defendants' acts of misappropriation will continue, and Power Integrations will continue to suffer irreparable harm.
>
> 101. Power Integrations has no adequate remedy at law and is entitled to an injunction under 18 U.S.C. § 1836 (b)(3)(A).
>
> 102. Upon information and belief, Defendants' continued use of these trade secrets is willful and malicious, and Power Integrations is entitled to recover

enhanced damages and its reasonable attorneys' fees under 18 U.S.C. §§
1836 (b)(3).

FAC ¶¶ 97–102.  Court finds that Plaintiff adequately pleads the damages element.

### iv. Conclusion

Accordingly, because Plaintiff fails to allege facts sufficient to establish each of the
required elements of a DTSA claim, the Court **DISMISSES** Plaintiff's DTSA cause of
action without prejudice.

### 3. Interference with Contractual Relations

Plaintiff's third cause of action is interference with contractual relations.  FAC ¶¶
104–112.  Defendants argue the cause of action is barred because the underlying contract
provisions are unlawful and, further, Plaintiff fails to allege sufficient facts to state a
plausible claim.  Doc. No. 30-1 at 19.  Plaintiff responds that it has alleged "each
Individual Defendant knowingly interfered with Power Integrations' contractual relations
with at least other Individual Defendants by conspiring with Silanna, [] Penbrothers, and
each another to secretly target and recruit Power Integrations' applications engineers."
Doc. No. 34 at 29.  It argues these actions resulted in Defendants breaching their
contracts, which harmed plaintiff.  *Id.*

> The elements which a plaintiff must plead to state the cause of action for
> intentional interference with contractual relations are (1) a valid contract
> between plaintiff and a third party; (2) defendant's knowledge of this
> contract; (3) defendant's intentional acts designed to induce a breach or
> disruption of the contractual relationship; (4) actual breach or disruption of
> the contractual relationship; and (5) resulting damage.

*AlterG, Inc.*, 388 F. Supp. 3d at 1149 (quoting *Pac. Gas & Elec. Co. v. Bear Stearns &
Co.*, 791 P.2d 587, 589–90 (Cal. 1990)).  "Unlike the related tort of intentional
interference with prospective economic advantage . . . intentional interference with

contractual relations does not require that a defendant's conduct be independently wrongful." *Blizzard Entm't Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1015 (C.D. Cal. 2013) (citing *Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 530 (1998)).

As noted above, Plaintiff fails to adequately allege a breach of contract claim against Defendants. *See supra* Section III.B.1. Plaintiff's claim for interference with contractual relations, therefore, must also fail. *See Harrison Ventures, LLC v. Alta Mira Treatment Ctr.*, LLC, No. C 10-00188 RS, 2010 WL 1929566, at *5 (N.D. Cal. May 12, 2010) ("When, as here, the complaint fails to allege an underlying breach, no claim for intentional interference can be stated."). Accordingly, the Court **DISMISSES** Plaintiff's interference with contractual relations cause of action without prejudice.

### 4. Interference with Prospective Economic Advantage

Plaintiff's fourth cause of action is interference with prospective economic advantage. FAC ¶¶ 113–19. Defendants argue that Plaintiff's claim is based upon the restrictive covenants and this tort requires an independently wrongful act, where Plaintiff alleges none and fails to detail which economic relationships were harmed. Doc. No. 30-1 at 20. Plaintiff responds that it alleges Defendants interfered with at-will employment relationships by using confidential information to target and recruit Plaintiff's employees. Doc. No. 34 at 30. Plaintiff further argues the restrictive covenants are lawful and its claim "is based not on the breach of these restrictive covenants, but the termination of at-will employment relations." *Id.* at 30.

> The elements of a claim for intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional [wrongful] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship;

and (5) damages to the plaintiff proximately caused by the acts of the defendant."

*AlterG, Inc.*, 388 F. Supp. 3d at 1151 (quoting *Blank v. Kirwan*, 703 P.2d 58, 70 (Cal. 1985)); *see also Pac. Gas & Elec. Co.*, 791 P.2d at 590 n.2.[10]  "[A] plaintiff must plead that the defendant engaged in an independently wrongful act."  *Korea Supply Co.*, 63 P.3d at 953.  "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Id.* at 954; *see also id.* at 954 n.11 ("Such an act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive.").  A plaintiff carries the burden "of pleading and proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.'"  *Della Penna*, 902 P.2d at 751 (quoting *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1371 (Cal. 1978)).

---

[10]  The Court quotes from the California Court of Appeal regarding clarification of the third element:

> The elements first appeared in this form in *Buckaloo v. Johnson*, 537 P.2d 865, 872 (Cal. 1975) which, along with *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* 686 P.2d 1158 (Cal. 1984), was disapproved in *Della Penna* "to the extent that language in [those decisions] addressing the pleading and proof requirements in the economic relations tort is inconsistent with the formulation we adopt in this case. . . ." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740, 751 n.5 (Cal. 1995)).  The *Della Penna* court approved a modified version of the standard jury instruction on intentional interference, BAJI No. 7.82, which changed the third element to provide that the defendant "'intentionally engaged in [*wrongful*] acts or conduct designed to interfere with or disrupt' the relationship."  *Della Penna*, 902 P.2d at 743 n.1.

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 49 Cal. Rptr. 2d 793, 802 (1996) (discussing the impact of *Della Penna*, 902 P.2d at 751, on the pleading requirements for an interference with prospective contractual or economic relations allegation); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 955 (Cal. 2003) ("After *Della Penna*, California has required plaintiffs to show that a defendant has engaged in an independently, or inherently, wrongful act.").

41

The Court finds that Plaintiff fails to allege an independently wrongful act necessary to sustain its cause of action. Plaintiff argues that its claim is predicated on "termination of at-will employment relations." Doc. No. 34 at 30. Plaintiff quotes the California Supreme Court for the proposition that "the termination of an at-will employment relation *may* be actionable under the standard applicable to claims for intentional interference with prospective economic advantage." *Reeves v. Hanlon*, 95 P.3d 513, 514 (Cal. 2004) (emphasis added).

Interference with an at-will employment relationship does not constitute the necessary independent wrong. As the *Reeves* court held,

> to recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act—i.e., an act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard'— that induced the at-will employee to leave the plaintiff.

*Reeves*, 95 P.3d at 520 (quoting *Korea Supply Co.*, 63 P.3d at 954). The court further noted that "it is clear from the standard that one commits no actionable wrong by merely soliciting or hiring the at-will employee of another." *Id.* at 515; *see also id.* at 521 ("[C]ase law in analogous contexts shields those employers who hire a competitor's at-will employees without engaging in unlawful conduct.").

Plaintiff neglects to allege an independent wrong. Plaintiff further fails to allege a wrong "by some legal measure *other than the fact of interference itself*." *Della Penna*, 902 P.2d at 751 (emphasis added) (quoting *Top Serv. Body Shop, Inc.*, 582 P.2d at 1371). Because Plaintiff fails to allege that Defendants acted in a manner "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard" that induced an at-will employee to leave Plaintiff, *Reeves*, 95 P.3d at 520 (quoting *Korea Supply Co.*, 63 P.3d at 954), Plaintiff fails to plead interference with prospective

economic advantage. Accordingly, the Court **DISMISSES** Plaintiff's interference with prospective economic advantage cause of action without prejudice.

### 5. Civil Conspiracy

Plaintiff's fifth cause of action is civil conspiracy. FAC ¶¶ 120–28. Defendants argue that Plaintiff's claim lacks the necessary predicate unlawful act and fails to provide enough facts to show an agreement to conspire. Doc. No. 30-1 at 20, 21. Plaintiff responds it adequately alleges that Defendants conspired "to target and steal Power Integrations' key engineers involved in the design and planning of Power Integrations' new and future products in order to misappropriate Power Integrations' trade secrets and other proprietary information concerning these products, causing harm to Power Integrations." Doc. No. 34 at 31.

"Under California law, there is no separate and distinct tort cause of action for civil conspiracy." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997); *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 459 (Cal. 1994) ("Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles."). "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp.*, 869 P.2d at 457.

Because a plaintiff cannot plead conspiracy as an independent cause of action, the Court **DISMISSES** Plaintiff's conspiracy cause of action **with prejudice**. *See AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 947 (N.D. Cal. 2003).

### 6. Unfair Competition

Plaintiff's sixth cause of action is unfair competition under the California Business and Professions Code. FAC ¶¶ 129–34. Defendants argue that Plaintiff fails to allege sufficient facts to show "any wrongful, unlawful, or fraudulent activity." Doc. No. 30-1 at 22. Plaintiff responds that it has alleged unlawful conduct and that Defendants unfairly conspired with Plaintiff's competitor. Doc. No. 34.

California Business & Professions Code § 17200 "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 540 (1999) (citations omitted). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

The unlawful prong "is essentially an incorporation-by-reference provision." *Obesity Research Inst., LLC v. Fiber Research Int'l*, LLC, 165 F. Supp. 3d 937, 952 (S.D. Cal. 2016); *see also Cel-Tech Commc'ns, Inc.*, 973 P.2d at 539–49 ("By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable."). Accordingly, "[w]hen a statutory claim fails, a derivative UCL claim also fails." *Obesity Research Inst.*, LLC, 165 F. Supp. 3d at 953 (quoting *Aleksick v. 7–Eleven, Inc.*, 140 Cal. Rptr. 3d 796, 801 (Ct. App. 2012)). Here, Plaintiff can succeed on this prong only if it pleads sufficient facts to support another cause of action. *See Aleksick*, 140 Cal. Rptr. 3d at 801. Because Plaintiff has failed to plead sufficient facts to bolster its other causes of action, its unlawful prong UCL claim also fails.

As to the unfair prong, "unfair" conduct must be violative of a public policy "tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46, 53 (Ct. App. 2010) (citations omitted); *see also Cel-Tech Commc'ns, Inc.*, 973 P.2d at 544 (requiring a finding of unfairness

under the UCL be tethered to legislatively declared policy). Here, Plaintiff has failed to allege that Defendants violated a public policy tied to an established constitutional, statutory, or regulatory provision. Thus, Plaintiff's unfair prong UCL claim fails.

Under the fraudulent prong, a plaintiff must "'show deception to some members of the public' . . . [or] allege that 'members of the public are likely to be deceived.'" *Herrejon v. Ocwen Loan Servicing*, LLC, 980 F. Supp. 2d 1186, 1207 (E.D. Cal. 2013) (citations omitted). Fraudulent conduct must be pled with particularity. *See Kearns*, 567 F.3d at 1127 (noting that Rule 9(b) applies to claims in federal court under the UCL). Allegations sounding in fraud meet the heightened pleading standards by alleging the "the who, what, when, where, and how." *Kearns*, 567 F.3d at 1124–25 (quoting *Vess*, 317 F.3d at 1106). Here, Plaintiff has not clearly alleged fraud. Relatedly, the Court finds that Plaintiff's allegations lack the requisite Rule 9(b) specificity needed to sustain an UCL allegation under the fraudulent prong. Thus, Plaintiff's fraudulent prong UCL claim, if any, fails.

Accordingly, the Court **DISMISSES** Plaintiff's UCL cause of action without prejudice.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. Although Plaintiff has failed to adequately plead its claims against Defendants, it is not clear that it would be unable to do so if given leave to amend. Accordingly, dismissal is without prejudice and with leave to amend—except as to Plaintiff's civil conspiracy claim. *See Knappenberger*, 566 F.3d at 942. Plaintiff must file a second amended complaint curing the deficiencies noted herein on or before **April 14, 2020**.

**IT IS SO ORDERED**.

Dated: March 26, 2020

HON. MICHAEL M. ANELLO
United States District Judge

20-cv-410-MMA (MSB)